## Erie Forge Company, Limited, *v.* Pennsylvania Iron Works Company, Appellant.

*Contract—Consideration—Equality of consideration—Accord.*

Ordinarily courts do not go into the question of equality or inequality of consideration but act upon the presumption that parties capable to contract are capable as well of regulating the terms of their contracts, granting relief only when the inequality is shown to have arisen from mistake, misrepresentation or fraud.

A very slight advantage to one party or a trifling inconvenience to the other is sufficient consideration to support a contract when made by a man of good capacity who is not at the time under the influence of any fraud, imposition or mistake.

Where a manufacturer and a customer cease business relations on account of a disputed claim, but subsequently the manufacturer offers to resume business relations, and requests the customer to furnish blue prints for articles desired, and this request is complied with, the resumption of business relations between the parties is a good consideration in law for the support of a promise either to "mark off" the old account which was disputed, or to "hold it in abeyance." Such an agreement meets all the conditions of an accord.

Accord and satisfaction is a good plea by a debtor to the action of his creditor but the legal notion of accord is a new agreement on a new consideration to discharge the debtor, and it is not enough that there be a clear agreement or accord and a sufficient consideration, but the accord must be executed.

*Contract—Construction—Province of court and jury.*

What the contract is in its terms and extent is ordinarily for the jury under all the evidence; its force and legal effect are a matter of law for the court.

Argued Dec. 12, 1902.   Appeal; No. 221, Oct. T., 1902, by defendant, from judgment of C. P. No. 4, Phila. Co., March T., 1899, No. 490, on verdict for plaintiff in case· of Erie Forge Company, Limited, v. Pennsylvania Iron Works Company. Before BEAVER, ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ.   Reversed.

Assumpsit for goods sold and delivered.   Before WILL-SON, J.

At the trial it appeared that the suit was brought to recover a balance alleged to be·due on a crank shaft furnished by the plaintiff to the defendant in 1893.   The defendant claimed that it had been subjected to substantial loss by reason of an unusual delay in the delivery of the shaft.   Defendant also alleged that the plaintiff had agreed to mark off this claim if the defendant would resume business relations.

The court charged in part as follows:

[Did the two parties come together, and did the plaintiff, the creditor, take something of substance by way of consideration for the obliteration or extinction of its claim?   As to that point, you have heard the testimony of Mr. Grist and of Mr. Coit.   It is said that the representative of the plaintiff, Mr. Harrington, the vice president of the plaintiff company, being dissatisfied with the existing status of affairs, seeing that by reason of the controversy which had arisen out of the claim of the plaintiff for the balance which was due, his concern was not getting any business from the defendant, came to Philadelphia, and that then it was arranged that, in consideration of the defendant company resuming business relations, sending blue prints, and accepting propositions from the plaintiff company, the claim of the plaintiff should be waived, should be wiped out, should cease to exist.   Was there any consideration in that?   Did the plaintiff get something of value?   Was it or was it not a consideration which might be said to have a money value, that business relations should be re-established? It is for you to say.   It is for you to say whether or not, in any proper and fair sense, it could be said that the plaintiff was getting what had a real, substantial, actual value, in being able to resume business relations with the defendant company,

whereby it could have the opportunity to make whatever profits might acrue in the performance or such a contract or contracts as it might obtain in pursuance of bids which the defendant might offer. If there was no advantage in that, if there was nothing in substance, nothing of value which they got, in pursuance of an arrangement such as the defendant alleges was made, then there would not be any such substantial consideration which the law would consider, upon which accord and satisfaction could be made. But if there was such consideration as I have referred to, then it would be for you to say whether or not the evidence showed that there was a settlement upon such a real and valuable consideration, whereby the plaintiff waived or extinguished the claim which it had against the defendant.]

Verdict and judgment for plaintiff for $813.22. Defendant appealed.

*Error assigned* was the portion of charge as above, quoting it.

*Ellis Ames Ballard*, with him *Rufus E. Shapley*, for appellant.—The legal effect of an oral contract is a question of law: Short v. Woodward, 79 Mass. 86 ; Rice v. Dwight Mfg. Co., 56 Mass. 80 ; Bald Eagle Valley R. R. Co. v. Nittany Valley R. R. Co., 171 Pa. 284 ; Northern Cent. Ry. Co. v. Walworth, 193 Pa. 215 ; Wetherill Bros. v. Erwin Wagener Co., 12 Pa. Superior Ct. 259 ; Harlan v. Harlan, 20 Pa. 303.

*Dwight M. Lowrey*, with him *Alfred R. Haig, Henry C. Thompson, Jr.*, and *William F. Harrity*, for appellee.—Binding instructions should have been given for plaintiff: Hearn v. Kiehl, 38 Pa. 149 ; Hosler v. Hursh, 151 Pa. 422 ; White v. Gray, 68 Maine, 579.

There was no accord because there was no agreement to do any particular thing. The agreement by a debtor to resume business relations with his creditor is not an agreement to do anything ; it is merely an agreement to listen and look pleasant : Bald Eagle Valley R. R. Co. v. Nittany Valley R. R. Co., 171 Pa. 284.

If the defendant had agreed to give its business to the plaintiff exclusively for a definite period, the consideration would

have been appropriate, and the contract would have been valid in law, not because of the business given to the plaintiff, but because of the restriction upon the defendant, prohibiting it from doing business with anyone else: Bald Eagle Valley R. R. Co. v. Nittany Valley R. R. Co., 171 Pa. 284; Cumberland Valley R. R. Co. v. Gettysburg & Harrisburg Ry. Co., 177 Pa. 519; Northern Central Ry. Co. v. Walworth, 193 Pa. 215.

The opportunity to make a profit or gain of any kind is not a consideration moving from the promisee. It has been expressly decided not to be a consideration for the promise: Frauenthal v. Derr, 13 W. N. C. 485; Kelso v. Reid, 145 Pa. 606.

Adequacy of consideration is necessarily a question of fact. The court will not determine it in any case: Hitchcock v. Coker, 6 Ad. & Ellis, 438.

. . . .

OPINION BY BEAVER, J., April 20, 1903:

Although "pleadings in full" are not printed in the appellant's paper-book, as required by our Rule 24, we gather from the abstract of proceedings and from the evidence that the plaintiff's claim was based upon a balance alleged to be due from the defendant for a crank shaft shipped by the former to the latter May 20, 1893; that, by reason of delay in the shipment, which caused the defendants considerable loss, this balance was disputed and, as a consequence thereof, business relations between the parties were suspended; that subsequently, at the instance of the plaintiff, these relations were resumed on the distinct agreement, according to the defendant's testimony, that the old account was to be "marked off" and, according to the testimony of the plaintiff, that it was to be "held in abeyance." This raised a question of fact which was properly submitted to the jury, whose verdict would have been conclusive, if it were clear from the record that it was based solely upon the question of fact so submitted. The appellants allege, however, and assign it as error, that the court submitted to the jury the question of the sufficiency of the consideration, upon which the alleged agreement was based, and that it is, therefore, impossible to tell upon which of the questions submitted to them the verdict of the jury was based. The appellee, on the other hand, contends that this question

of consideration was one of mixed law and fact, namely, whether the alleged promise to resume business relations had a possibility of value which is admitted was a question for the court and, secondly, whether such a promise had a recognized commercial value in the business world which, it alleges, was a question of fact for the jury. This attempted distinction is too refined. What the appellee calls the question of logic is the question of law involved. Whether or not the alleged promise to resume business relations had value or, as the appellee puts it, Was it sufficiently definite and precise as to have the possibility of value? is admitted to be a question of law. The court, however, did not determine it as a question of law but left the entire question to the jury. We have both the appellant and appellee, therefore, claiming that the question should have been determined as a matter of law in their favor. If the appellee is correct and the question should have been determined in its favor, a reversal would do the appellant no good.

This brings us to the real question in the case, namely, Was the promise to resume business relations, made by the defendant to the plaintiff, subsequently carried into effect, resulting in a large amount of business or trade given by the defendant to the plaintiff, such a consideration as would support the promise, as claimed by the appellant, to " mark off " the old account?

In order to determine this question, it is well to bring distinctly to mind the situation of the parties. The plaintiff had furnished the defendant a crank shaft which was much delayed in delivery. The delay caused the defendant great loss, as it alleged. The claim was disputed and, in consequence of the dispute, business relations between the parties had been suspended. Such relations were evidently regarded by the plaintiff as of value. Propositions for the resumption of business relations were made by it. In order to their resumption, it was necessary for the defendant to furnish plaintiff copies of the blue prints of such articles as were desired by the defendant, manufactured by the plaintiff. Upon blue prints being furnished, the plaintiff could then intelligently bid for furnishing the articles required. The acceptance of the bid in the end depended upon the defendant. The resumption of business relations was evidently regarded by the plaintiff as of value, other-

wise why negotiate for such a resumption ? Without it, there was no possibility of the plaintiff doing business with the defendant. Something must first be done by the defendant in the furnishing of the blue prints. This, of course, involved a certain amount of expenditure in the preparation of the blue prints and of labor in furnishing them on the part of the defendant.

How did the parties themselves regard the transaction ? This has weight in determining the question. " Ordinarily courts do not go into the question of equality or inequality of considerations but act upon the presumption that parties capable to contract are capable as well of regulating the terms of their contracts, granting relief only when the inequality is shown to have arisen from mistake, misrepresentation or fraud: " Shepard v. Rhodes, 84 Am. Dec. 573. " A very slight advantage to one party or a trifling inconvenience to the other is sufficient consideration to support a contract when made by a man of good capacity who is not at the time under the influence of any fraud, imposition or mistake : " Harlan v. Harlan, 20 Pa. 303. In Bald Eagle Valley R. R. Co. v. Nittany Valley R. R. Co. et al., 171 Pa. 284, it was held that the subscription by the plaintiff to the bonds of the defendant company, in consideration of the defendant, a manufacturing company, giving its traffic to the plaintiff, a carrying company, was a good consideration for the contract, although the plaintiff company received the bonds for which it subscribed, and this, irrespective of the question as to whether or not the carrying contract would prove valuable or not. From these and kindred cases it is not difficult to reach the conclusion that the resumption of business relations between the plaintiff and the defendant, was a good consideration in law for the support of the promise either to "mark off" the old account which was disputed, as claimed by the appellant, or to "hold it in abeyance," as claimed by the defendant. It was an advantage to the plaintiff to be permitted to bid for the machinery or materials desired by the defendant and this is proved by the subsequent transactions between the parties which resulted, as is shown by the testimony, in a large amount of business growing out of the resumption of business relations. It was also some inconvenience and some expense, trifling to be sure but, nevertheless, real, for the defendant to furnish blue

prints to the plaintiff, in order to enable it to bid intelligently. The parties were abundantly able to make their contracts. The plaintiff regarded the resumption of business relations as of value and the defendant regarded such a resumption as a concession on its part. This was a clear recognition on both sides of a valuable consideration and, inasmuch as it accords with what the law holds to be a good consideration for a contract, it follows that the court should have so held and instructed the jury that the alleged contract, whatever it was, was based upon a good consideration.

The appellee insists that binding instructions should have been given for plaintiff, because there was no accord in that there was no agreement to do any particular thing. Accepting the definition in Hearn v. Kiehl, 38 Pa. 149 : "Accord and satisfaction is a good plea by a debtor to the action of his creditor but the legal notion of accord is a new agreement on a new consideration to discharge the debtor, and it is not enough that there be a clear agreement or accord and a sufficient consideration but the accord must be executed ; " the agreement in this case meets all the conditions of an accord.

As we have already shown, there being a good consideration for the new agreement and that agreement having been executed by the resumption of business relations, as is clearly shown, it follows that the only other question involved in the case is the one of fact which was submitted and which must always be submitted to the jury, namely, What was the agreement upon which the resumption of business relations was based? Was it an agreement to "mark off" the old account, or simply to "hold it in abeyance?" That was fairly submitted to the jury and, if we were able to determine from the verdict that it was based upon that question of fact alone, there would be no need of anything further in the case. Inasmuch, however, as the question of consideration was also submitted to the jury, it is impossible to determine upon what the verdict was based. The case must therefore, be retried, for, as was said in Codding v. Wood, 112 Pa. 371, " What the contract is in its terms and extent is ordinarily for the jury under all the evidence ; its force and legal effect are a matter of law for the court."

Judgment reversed and a new venire awarded.